J-S38015-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

C.M.K.                                    :     IN THE SUPERIOR COURT OF
                                          :           PENNSYLVANIA
                                          :
            v.                            :
                                          :
                                          :
F.P.K., JR.                               :
                                          :
            Appellant                     :     No. 227 WDA 2018

Appeal from the Order Entered January 8, 2018
In the Court of Common Pleas of Venango County Civil Division at No(s):
100-2013

BEFORE:   BOWES, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                          FILED AUGUST 17, 2018

F.P.K., Jr. ("Father") appeals from the January 8, 2018 child custody order denying his petition to modify the existing custody arrangement wherein C.M.K. ("Mother") exercises primary physical custody of their two sons, F.K. and B.K., during the school year, and the parties share custody during the summer. After careful review, we affirm.

The parties married on August 21, 2004. Three children were born of the marriage: F.K., born January 2006; E.K., born August 2008; and B.K., born February 2011. Mother filed a complaint in divorce on January 28, 2013. Tragically, E.K. died in April of 2014, while in Father's custody.[1]

_____

[1] The record reveals that E.K. fell from a farm tractor Father was operating, and was run over, suffering fatal injuries. Father's response to petition for emergency custody relief, 5/23/14, at ¶ 9. F.K. and B.K. witnessed the incident, and saw E.K. fatally injured on the ground. Id. at ¶ 10.

_____

* Retired Senior Judge assigned to the Superior Court.

The parties agreed to a child custody consent order dated June 18, 2015. The order provided Mother primary physical custody of F.K. and B.K. Father exercised partial physical custody of F.K. and B.K. every other weekend from Thursday at 4:00 p.m. until Sunday at 7:00 p.m. Additionally, Father exercised physical custody on alternating Wednesdays from 4:00 p.m. to 7:00 p.m., as well as an overnight on Father's first custodial Wednesday of the month.

Pursuant to an agreement of the parties, the trial court amended the order on December 2, 2015. The order expanded Father's weekend physical custody to Thursday at 4:00 p.m. through Monday at 9:00 a.m., with a minor alteration in the winter due to Father's work schedule. However, Mother and Father could not agree on a summer physical custody schedule. Following a trial, on June 28, 2016, the trial court issued findings of fact and an order granting Father shared physical custody of F.K. and B.K. on a week-on, week-off basis over the summer. The custody schedule during the school year remained the same.

On March 20, 2017, Father filed a petition for modification of custody, seeking shared physical custody. The court held a trial on Father's petition on October 19, 2017 and October 20, 2017. The court issued findings of fact on December 22, 2017, and an order denying Father's petition for modification of physical custody on January 8, 2018. Father filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

- 2 -

Father raises the following issues for review:

1.    Did the trial court commit an error of law and abuse its discretion in denying [Father]'s request for an increase in custodial time to a pure shared [schedule] by ignoring clear evidence that [Mother] was less likely to encourage and permit frequent and continuing contact with [Father], and that [Mother] continues to promote and facilitate a campaign to turn the children against [Father] in an atmosphere that fosters a "we versus Dad" mindset in the children?

2.    Did the trial court commit an error of law and abuse its discretion in denying [Father]'s request for an increase in custodial time to a pure shared schedule by failing to adequately consider the facts and credible evidence of record elicited at trial which demonstrated the . . . successful use of[,] and transition to[,] a pure shared custody schedule over the prior two summers?

3.    Did the trial court commit an error of law and abuse its discretion in denying [Father]'s request for an increase in custodial time to a pure shared [schedule] where an independent examination of the record suggests and warrants an order on the merits of this case that awards pure shared physical custody pursuant to the factors enumerated at 23 Pa.C.S.A. § 5328?

Father's brief at 5-6.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.

§§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.  However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial

court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

C.R.F. v. S.E.F., 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted); see also E.R. v. J.N.B., 129 A.3d 521, 527 (Pa.Super. 2015) appeal denied, 129 A.3d 521 (Pa. 2016).

This Court consistently has held:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Ketterer v. Seifert, 902 A.2d 533, 540 (Pa.Super. 2006) (quoting Jackson v. Beck, 858 A.2d 1250, 1254 (Pa.Super. 2004)). In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

M.A.T. v. G.S.T., 989 A.2d 11, 18-19 (Pa.Super. 2010) (en banc) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. See 23 Pa.C.S. §§ 5328, 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. See E.D. v. M.P., 33 A.3d 73, 79-80 n.2 (Pa.Super. 2011). Specifically, § 5328(a) of the Act provides as follows:

§ 5328.  Factors to consider when awarding custody

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Further, with regard to custody, we have stated as follows:

. . . "All of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. Id.

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." C.B. v. J.B., 65 A.3d 946, 955 (Pa.Super. 2013), appeal denied, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is

required is that the enumerated factors are considered and that the custody decision is based on those considerations." M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa.Super. 2013), appeal denied, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). Id.

A.V. v. S.T., 87 A.3d 818, 822-23 (Pa.Super. 2014).

Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. M.J.M. v. M.L.G., 63 A.3d 331, 339 (Pa.Super. 2013). Critically, as we stated in M.J.M.:

It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. See A.D. v. M.A.B., 989 A.2d 32, 35-36 (Pa.Super. 2010) ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

Id. (emphasis added).

With regard to Father's first issue, Father contends the trial court erred by concluding factors one and eight do not favor either party. Father argues both factors should favor him. Because of the factual similarities regarding Father's argument, we consider factors one and eight together.

Here, the trial court explained its evaluation of factors one and eight as follows:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and other party.

The court finds that both the mother and the father equally at this time are encouraging and permitting frequent and continuing contact between the child and the other party.

. . . .

(8) The attempts of a parent to turn the child against the other parent[, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.]

The court notes that there has been a significant history of the mother influencing both of these children, especially the oldest son, [F.K.], negatively towards the father; however the most recent testimony indicates that has been lessening significantly and the court finds that the father has made derogatory comments about the mother to or in front of the children. Therefore, the court finds that both parents have exercised conduct that would tend to turn the child against the other parent.

Trial Court Findings, 12/22/17, at 1, 3-4.

With respect to factor one, Father asserts that Mother is less likely to encourage frequent and continuing contact with the other party. Father's brief at 16. Father claims the children call Mother constantly while in his care, while Father has to remind Mother to have the children call him at night. Id. at 17. Father argues that he has been accommodating to Mother's requests for schedule changes, while Mother did not call Father when he failed to appear for a July 3rd custody exchange. Id. Father concludes that the evidence established the unreasonableness of Mother's non-reciprocated demands, and showed that Father provides Mother greater contact with the children than Mother does for Father. Id. at 19. Accordingly, Father asserts factor one militates in his favor. Id.

With regard to factor eight, Father argues that the trial court erred by concluding Mother and Father both equally attempt to turn the children against the other parent. While Father acknowledges the children may have overheard negative comments made between Father and his mother, Father asserts, "this pales in comparison to the continued, directed attempts by Mother to alienate Father from his children." Id. at 19. Father notes testimony from the guardian ad litem that F.K. does not like to admit doing anything fun at Father's house, and almost has a "we versus dad mentality." Id. To support his claim that Mother alienates F.K. and B.K., Father relies on Mother's testimony regarding a July 3rd custody exchange. Id. at 21. F.K. inquired as to why he had to see Father on the holiday. Id. Father claims Mother, instead of encouraging F.K. to spend time with Father, framed her answer as, "if your dad has you on the 4th, would you like to come back and see me?" Id. at 21. Father asserts Mother's behavior greatly outweighs any comments made by his family, and necessitates factor eight be weighed in his favor. Id. at 22.

During the trial, Mother and Father presented countervailing perspectives that criticized the other's interference with the parent-child relationship while simultaneously defending their own behavior. In this vein, Father testified that F.K. and B.K. have been "brainwashed" and alienated by Mother. N.T., 10/19/17, at 162, 170. Mother denied any such plot to ruin Father's relationship with F.K. and B.K. N.T., 10/20/17, at 107. Further, she

presented the testimony of F.K., the oldest child, who reported that Father complains about not being awarded "fifty-fifty" custody, and having to pay child support. N.T., 10/19/17, at 22, 65. Additionally, F.K. reported that Father once threatened to shoot Mother's boyfriend in the head. Id. at 28.

Father testified that he is the one who is flexible and accommodating, while Mother is not. Id. at 161. Father also claimed it is difficult for him to speak to the children when they are in Mother's custody. Id. Mother countered that Father has made altering the custody schedule difficult, such as demanding that Mother agree to trade two days of custody when she asks for one day of his. N.T., 10/20/17, at 99. As it relates to encouraging contact with the children, Mother stated that she makes sure the children finish their homework prior to going to Father's home so they can relax and spend quality time with Father or their grandparents, without worrying about getting everything ready for school. Id. at 56, 89. Further, Mother claims that she reminds F.K. to call Father. Id. 118.

Father also presented the testimony of his ex-girlfriend, A.S., who recalled an encounter that she had with Mother and the younger son at a store. N.T., 10/19/17, at 128. A.S. testified that, in B.K.'s presence, Mother demeaned Father's parenting skills. Id. Mother acknowledged talking to A.S., but denied that the conversation regarding Father occurred. N.T., 10/20/17, at 117.

Similarly, Father asserts that Mother's conversation with F.K. regarding the July 3rd custody exchange established her "'us against dad' mentality." Father's brief at 21. The parties' physical custody schedule provides the parent who does not have physical custody of the children over the week that includes July 4th, with physical custody from July 3rd at 5:00 p.m., until July 4th at noon. Mother's testimony regarding her discussion with F.K. follows:

> I had the kids July 4th, but the custody agreement is the parent that doesn't have them for the 4th gets them from 5:00 on the 3rd from noon to four, which it -- even [F.K.] is why do we got to go at this time? It's just for a couple hours. I explained to him if your dad has you on the 4th, would you like to come back and see me? Oh, I get it.

N.T., 10/20/17, at 114.

Rather than suggesting F.K. leave Father to spend time with her, as suggested by Father's argument, Mother's testimony explains the parties' custody schedule, as well as what will happen when Father has custody on July 4th, and the children have the overnight with Mother on July 3rd.

Virginia Sharp, Esquire, the court-appointed guardian ad litem, provided the simplest analysis of this case: the main issue "is the fact that these parents hate each other." N.T., 10/19/17, at 90. While Ms. Sharp acknowledged F.K.'s tendency to invoke the "[us] versus dad" mentality, she did not believe "either household encourages the relationship that these boys have with the individuals in the other household, and it's just a disservice to the boys." Id.

The trial court agreed with Ms. Sharp's characterization and, it concluded that neither factor one nor eight favored either parent. The certified

record supports that conclusion. While Father highlights the testimony he believes is favorable to his position, a review of the foregoing evidence supports the trial court's conclusion that factors one and eight are neutral. Accordingly, we do not disturb the trial court's determination in this regard.

Next, we address Father's second and third issues together. In Father's second issue, he argues that the success of the alternating physical custody schedule during the summer should have weighed in favor of a year-round shared physical custody schedule, as opposed to the trial court's decision to maintain the status quo. Father's brief at 23-24. Similarly, in his third issue, Father suggests that an independent review of the record supports a shared physical custody schedule. Id. at 24. These arguments focus on Mother's purported failure to support the children developing a healthy relationship with him, and her continuing attempts to isolate him from his sons by "poisoning" them. Id. at 27. Father contends the trial court erred by "simply relying on the prior custody [o]rder." Id. at 26.

The parties offered conflicting testimony with respect to the success of the summer custody schedule. Father testified that his additional time with the children during the summer was beneficial. N.T., 10/19/17, at 149. However, F.K. testified he did not like the summer schedule because he does not get to see his friends. Id. at 23. F.K. would prefer no set schedule, but if a schedule were required, he would like less time with Father. Id. at 22. Mother testified the summer schedule is tolerable. N.T., 10/20/17, 108.

Mother thought June and July went well, but by August, Mother observed the children were tired of the schedule, did not want to go with Father, and complained. Id. at 108-109.

As we construe Father's second and third issues, we interpret them as a dispute regarding the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Father, in essence, questions the trial court's conclusions and assessments and seeks to have this Court re-find facts, re-weigh evidence, and/or re-assess credibility in accordance with his view of the evidence. Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. See C.R.F., supra at 443; see also E.R., supra at 527. As we stated in King v. King, 889 A.2d 630, 632 (Pa.Super. 2005):

> It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . .

(quoting Hanson v. Hanson, 878 A.2d 127, 129 (Pa.Super. 2005)). After a thorough review of the record, we find no abuse of discretion. To the extent Father challenges the weight attributed to any factor by the trial court, no relief is due. As stated above, the amount of weight that a trial court gives to

any one factor is almost entirely within its discretion. See M.J.M., supra at 339.

In sum, upon review of the certified record, we conclude that the trial court's determinations regarding the custody factors set forth in § 5328(a) to determine the best interests of the children are supported by competent evidence. Thus, we do not disturb them. See C.R.F., supra at 443; see also E.R., supra at 527. Accordingly, we affirm the trial court's order denying Father's petition to modify custody.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2018